UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ROBERT M.,

                                         Plaintiff,

                                     v.

ANDREW SAUL,
Commissioner of Social Security,

                                           Defendant.
_____

                                           <u>DECISION AND ORDER</u>

                                           19-CV-0435L

Plaintiff appeals from a denial of disability benefits by the Commissioner of Social Security ("the Commissioner"). This action is brought pursuant to 42 U.S.C. §405(g) to review the Commissioner's final determination.

On June 12, 2015, plaintiff, then twenty years old, filed applications for a period of disability and disability insurance benefits, and supplemental security income, alleging disability beginning April 1, 2006. (Administrative Transcript, Dkt. #4 at 44). Those applications were initially denied. Plaintiff requested a hearing, which was held October 4, 2017 before Administrative Law Judge ("ALJ") Rosanne M. Dummer. The ALJ issued an unfavorable decision on October 26, 2017. (Dkt. #4 at 44-61). That decision became the final decision of the Commissioner when the Appeals Council denied review on October 15, 2018. (Dkt. #4 at 30-32). Plaintiff now appeals.

The plaintiff has moved for remand of the matter for further proceedings (Dkt. #6), and the Commissioner has cross moved (Dkt. #8) for judgment on the pleadings, pursuant to Fed. R. Civ.

Proc. 12(c). For the reasons set forth below, the plaintiff's motion is denied, the Commissioner's cross motion is granted, and the decision appealed-from is affirmed.

**DISCUSSION**

Determination of whether a claimant is disabled within the meaning of the Social Security Act follows a well-known five-step sequential evaluation, familiarity with which is presumed. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). *See* 20 CFR §§404.1509, 404.1520.

The Commissioner's decision that a plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. §405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002).

The ALJ's decision summarizes plaintiff's health records reflecting diagnoses of mild lumbar degenerative disc disease, attention deficit hyperactivity disorder ("ADHD"), marijuana abuse, and a learning disorder, which the ALJ determined together constituted a severe impairment not meeting or equaling a listed impairment. (Dkt. #4 at 46). The ALJ also considered, among other things, plaintiff's health records indicating sporadic treatment for restless leg syndrome, asthma, flat feet, headaches, and visual symptoms, but found these to be non-severe impairments. (Dkt. #4 at 47).

In applying the special technique, the ALJ concluded that plaintiff has a mild limitation in understanding, remembering and applying information, a mild limitation in social interaction, a moderate limitation in concentration, persistence and pace, and no limitation in the ability to adapt or manage himself. (Dkt. #4 at 47-48).

Upon review of the record, the ALJ determined that plaintiff retains the residual functional capacity ("RFC") to perform medium work, with the ability to lift and carry fifty pounds occasionally and twenty-five pounds frequently, and stand or walk up to six hours in an eight-hour

workday. Plaintiff must avoid concentrated exposure to extreme temperatures, pulmonary irritants, and humidity. He should not perform commercial driving and should avoid work hazards, such as dangerous moving machinery and unprotected heights. Secondary to mental impairments, he can understand, remember, and carry out instructions for routine, repetitive tasks commensurate with unskilled work. He can sustain attention and concentration for at least two-hour segments of time in an eight hour day. He can tolerate only brief and superficial contact with others. He can adapt to changes in the workplace for routine, repetitive tasks, but should not perform fast-paced or high production rate work. (Dkt. #4 at 48-49).

When asked if there were positions in the economy that a person with this RFC could perform, vocational expert Darin Cavallero identified the representative unskilled medium position of "dining room attendant," and unskilled light positions of "inspector-hand packager" and "price marker." (Dkt. #4 at 60). The ALJ accordingly found plaintiff not disabled.

I.      The ALJ's Assessment of Plaintiff's Insomnia

In determining plaintiff's severe impairments, the ALJ discussed plaintiff's complaints of restless legs syndrome and his use of marijuana to help him sleep, but concluded that because plaintiff had on one occasion reported some improvement in his symptoms with prescription anti-convulsants, his restless legs syndrome was not a severe impairment. (Dkt. #4 at 47). The ALJ further found that plaintiff's statements about his sleep disturbances were inconsistent and therefore lacking in credibility. For example, although plaintiff testified at the hearing that he only sleeps for an hour or two per night, the record reflected that he typically told treatment providers that he slept from "two to five" or "three to six" hours per night, and indicated that marijuana was helping him. (Dkt. #4 at 53, 56, 389, 420, 435).

Plaintiff argues that the ALJ erred in failing to find that his insomnia was a "severe" impairment at step two, and thus failed to properly assess its impact on plaintiff's ability to work, or to formulate an RFC that sufficiently accounted for insomnia-related limitations.

Notwithstanding the typical meaning of the word "severe," the second step's evidentiary requirement is *de minimis*, and is intended only to screen out the truly weakest of cases. *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995). Thus, a step two finding of "not severe" is only appropriate where "the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect'" on an individual's ability to perform basic work activities. *Rosario v. Apfel*, 1999 U.S. Dist. LEXIS 5621 at *14 (E.D.N.Y. 1999) (quoting *Bowen v. Yuckert*, 482 U.S. 137, 154 n.12 (1987)). "Basic work activities" are the "abilities and aptitudes necessary to do most jobs," and they include physical, postural and sensory functions, as well as mental functions like understanding, carrying out, and remembering simple instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b), 416.921(b).

Here, while the ALJ did not conclude that plaintiff's insomnia was a severe impairment, there is no question that she considered it in her analysis. Initially, the Court notes that plaintiff's insomnia and restless legs syndrome were interrelated: plaintiff's treating neurologist and sleep specialist, Dr. Kenneth Murray, attributed plaintiff's insomnia to his uncontrolled restless legs syndrome, and the two conditions were repeatedly discussed in tandem, both by Dr. Murray and by the ALJ. (Dkt. #4 at 416, 421). The ALJ's decision refers to plaintiff's insomnia diagnosis, insomnia treatment, fragmented sleep and difficulty sleeping no less than 18 times, explicitly identifying it as one of the primary bases upon which plaintiff was seeking benefits, and mentions restless legs syndrome at least 7 times. (Dkt. #4 at 47, 49, 50, 51, 52, 53, 55, 56).

Moreover, several of the medical opinions of record upon which the ALJ relied were rendered with knowledge of plaintiff's sleep disturbances, whether characterized as insomnia, restless legs syndrome, or both. Plaintiff's insomnia diagnosis informed the opinions of consulting psychologist Dr. Susan Santarpia, which the ALJ gave some weight, and those of reviewing state agency psychologist Dr. S. Bhutwala and reviewing medical expert Dr. S. Gitlow, which were given significant weight. Indeed, the non-examining physicians' opinions were based upon a full review of all of plaintiff's treatment records, including his treatment with Dr. Murray for insomnia and/or restless legs syndrome. (Dkt. #4 at 110-119, 396-400, 513-18). The report of consulting family physician Dr. Donna Miller, which the ALJ gave significant weight, also took note of plaintiff's restless legs syndrome and difficulty sleeping. (Dkt. #4 at 402-405).

Other evidence of record also supports the ALJ's finding that plaintiff's insomnia did not have more than a minimal effect on his ability to perform work-related functions. Although plaintiff presented to Dr. Murray as fatigued, and reported fragmented sleep totaling no more than five or six hours per night (Dkt. #4 at 419, 420, 430, 434-35), plaintiff was consistently found by his treatment providers to be cooperative, pleasant, alert and oriented, with appropriate affect, "grossly intact" memory, and no strength or dexterity deficits, and plaintiff generally denied confusion or loss of memory. (Dkt. #4 at 527). *See also* Dkt. #4 at 393, 397-98, 402-405, 414, 420, 432, 435-36, 438-39, 466-67, 470-72, 474-75, 481-82.

Furthermore, when Dr. Murray completed an RFC form for plaintiff, he made no mention of any limitations stemming from insomnia or sleep disorders at all. Instead, he indicated that plaintiff's "posttraumatic back pain and adverse effect of [unspecified] medication" posed limitations which included the need to take rest breaks. Notably, Dr. Murray indicated that such breaks were necessary to "relieve pain," and declined to endorse an available descriptor that would

have indicated that they were also required to "relieve fatigue." Indeed, Dr. Murray's treatment notes consistently describe plaintiff as pleasant, alert, oriented, articulate, cooperative, and attentive, with no defects in insight, judgment, short or long term memory, strength, coordination, or gait, even on occasions when plaintiff presented as fatigued or with complaints of impaired cognition and attention due to inadequate sleep. (Dkt. #4 at 389-90, 392-93, 532-36).[1]

In short, the record does not support plaintiff's claim that his insomnia "ha[d] more than a minimal effect on his ability to work." SSR 85-28, 1985 SSR LEXIS 19 at *9 (defining severe impairment). *See generally Donahue v. Colvin*, 2018 U.S. Dist. LEXIS 87554 at *14-*15 (W.D.N.Y. 2018).

Furthermore, even assuming *arguendo* that the ALJ erred in failing to find that plaintiff's insomnia was a severe impairment at step two, any such error is harmless.

The ALJ discussed plaintiff's insomnia and restless legs syndrome extensively throughout her sequential analysis, and crafted an RFC that explicitly accounted for all of plaintiff's "severe and nonsevere impairments" and limited him, inter alia, to routine, repetitive tasks, with no commercial driving, work hazards, or fast-paced or high production pace work. (Dkt. #4 at 58). *See Woodmancy v. Colvin*, 577 F. App'x 72, 74 n.1 (2d Cir. 2014) (even if ALJ failed to identify all severe impairments at step two, there is no reversible error where the ALJ considered the impact of all severe and non-severe impairments at step four); *Reices-Colon v. Astrue*, 523 Fed. App'x 796, 798 (2d Cir. 2013)(any error by ALJ in failing to identify certain conditions as "severe

---

[1] While acknowledging Dr. Murray's status as a treating physician and his areas of specialty, the ALJ gave Dr. Murray's opinion "limited" weight, noting that objective imaging studies of plaintiff's back had shown "underwhelming" findings with no abnormalities and only mild degeneration, that plaintiff had received only conservative treatment (physical therapy and massage) for his back pain, and that Dr. Murray's reports (which assessed plaintiff's exertional abilities as full or normal) had shown no clinical abnormalities that warranted significant limitations. (Dkt. #4 at 55, 406, 463, 477, 482). The ALJ likewise rejected a 2-sentence October 10, 2017 letter in which Dr. Murray stated, in conclusory fashion, that plaintiff could not possibly work "[d]ue to his insomnia," as the letter was unsupported by any clinical findings and amounted to little more than an opinion on the ultimate issue of disability, which is reserved for the Commissioner. (Dkt. #4 at 55, 530). The Court finds no error in the ALJ's assessments of Dr. Murray's opinion or his October 10, 2017 letter, and plaintiff does not challenge them on appeal.

impairments" at step two is harmless, where the ALJ proceeded through subsequent steps which did consider those conditions); *Michael R. v. Commissioner*, 2021 U.S. Dist. LEXIS 19618 at *14 (W.D.N.Y. 2021)("[w]here an ALJ proceeds past step two and considers the effects of all of claimant's impairments through the remainder of the sequential evaluation process, any error at step two is harmless"); *Poles v. Berryhill*, 2018 U.S. Dist. LEXIS 49480 at *7 (W.D.N.Y. 2018) (an ALJ's failure to characterize an impairment as "severe" is harmless where the ALJ nonetheless considers the "combined effects of all impairments," both severe and non-severe, in making his RFC finding). The ALJ's RFC finding is supported by substantial evidence, and there is no convincing evidence of record that other and further limitations were required to account for plaintiff's severe and non-severe impairments, including insomnia.

I have considered the remainder of plaintiff's arguments, and find them to be without merit.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to reverse the ALJ's decision and remand the matter (Dkt. #6) is denied, and the Commissioner's cross motion for judgment on the pleadings (Dkt. #8) is granted. The ALJ's decision is affirmed in all respects, and the complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       March 1, 2021.